FRIEDA SCHAFFRAN, Appellant, *v.* THE PRESS PUBLISH-
ING COMPANY, Respondent.

(Argued December 3, 1931; decided January 5, 1932.)

*Arthur Hutter* for appellant. A comparison between
the publication and the trial it purports to report estab-
lishes conclusively that the report was neither fair nor
true and, therefore, not privileged. (*Warner* v. *Press
Publishing Co.*, 8 N. Y. Supp. 341; 132 N. Y. 181; *Breslin*
v. *Star Co.*, 85 Misc. Rep. 609; 166 App. Div. 89.)

*Charles B. Brophy* for respondent. The defense of privilege under section 337 of the Civil Practice Act was made out. (*Lee* v. *Brooklyn Union Pub. Co.*, 209 N. Y. 245; *D'Auxy* v. *Star Co.*, 31 Misc. Rep. 388; *Hemmens* v. *Nelson*, 138 N. Y. 517.)

CRANE, J. This is an action of libel in which the complaint has been dismissed on the ground that the article appearing in the defendant's newspaper was a fair and true report of a judicial proceeding.

The complaint sets forth the alleged libelous article to be the following:

" Asking no alimony and encountering no opposition, Mme. Bronislawa Lamprecht de Petschenko obtained a divorce decree yesterday in Supreme Court against Conrad Lamprecht.

" Justice Townley awarded the decree when she produced testimony that her husband lived during parts of 1925 and 1926 with a woman known as Mrs. Schafran, and that he and an unidentified woman were surprised by a divorce raiding party at No. 27 West 94th Street, Jan. 31, 1927. Mr. Lamprecht was not in court. She was.

" Mme. de Petschenko, sometimes known as ' Countess de Petschenko ' or as ' Baroness de Petschenko ', was the centre of a society turmoil last December in connection with her promotions of benefits for refugee Russian children in Europe. On Dec. 21 she appeared before the Department of Public Welfare to vindicate herself of scandal in the use of the funds by showing her accounts.

" Her activities were investigated and she was given a clean slate."

It further states that the plaintiff, Frieda Schaffran, is a married woman living with her husband, and the article imputes to her unchastity in that the court adjudged her guilty of adultery with a Mr. Lamprecht. The answer sets forth as an affirmative defense to this complaint the pleadings in the divorce case in which

Bronislawa Lamprecht sued her husband, Conrad Lamprecht for divorce, alleging improper conduct with Mrs. Schaffran at 14 West One Hundredth street, New York city, and also with an unknown woman at 27 West Ninety-fourth street, New York city. The answer then contains portions of the evidence given upon the default trial of this divorce case, wherein it appears that the janitor of the apartment house, 14 West One Hundredth street, swore that Mrs. Schaffran lived in an apartment in his building, and that Mr. Lamprecht lived there also. There were two bedrooms. He does not attempt to say that they lived there as man and wife or that any improper relations existed between them. Further testimony was also given, as in this libel trial all the evidence in the divorce case was introduced. As to the unknown woman the testimony was conclusive. A raid had been made on 27 West Ninety-fourth street and Mr. Lamprecht found in bed with the woman who was unidentified. There was no defense. At the close of the trial of the divorce case the judge said: " I will give judgment for the plaintiff. Submit findings and decree." He did not say that he found Mrs. Schaffran had committed adultery with Mr. Lamprecht or had lived in improper relations with him. The findings and decree were not entered in the case until after the publication in the newspaper of which complaint is made. However, in the decree the judge exonerated Mrs. Schaffran and based his findings upon the evidence against the unknown woman.

Of course the reporter could know nothing about these findings or the judgment on the thirtieth day of March, when he wrote the article appearing in print. This was the day after the trial. He undertook, however, in writing his article, to complete that which the judge had left incomplete; he attempted to make the findings which the judge had reserved for a later day, for in the publication he wrote, " Justice Townley awarded the decree

when she produced testimony that her husband lived during parts of 1925 and 1926 with a woman known as Mrs. Schafran." The decree had not been signed nor entered. By the very instruction of the judge it was to be submitted with the findings. The judge had not found, as these words implied, that Mrs. Schaffran had committed adultery with Mr. Lamprecht. On the hearing of the libel case counsel for the defendant conceded that the words of the printed article implied and meant to charge improper conduct upon the part of Mrs. Schaffran. This is the effect of his concession that the publication is libelous *per se.*

We think that the reporter went too far. Looking at the matter as a pure proposition of law, without intimating that the reporter acted willfully or recklessly, we think that the article was not a fair and true report of the default divorce action and does not come within the protection of section 337 of the Civil Practice Act. (*Lee* v. *Brooklyn Union Publishing Co.*, 209 N. Y. 245; *Campbell* v. *New York Evening Post, Inc.*, 245 N. Y. 320.) The evidence which the reporter heard did not prove to the mind of the judge, as he stated that it did, the adultery of Mrs. Schaffran. He made a guess at what the judge would find and guessed wrong.

The complaint should not have been dismissed, but all the facts and circumstances should have been submitted to the jury to determine whether, considering the divorce action in which Mrs. Schaffran was alleged to be a corespondent and the evidence given against her as to a joint habitation with Mr. Lamprecht, the defendant's publication did or could have caused her any damage.

The judgment of the Appellate Division and that of the Trial Term should be reversed, and a new trial granted, with costs to abide the event.

CARDOZO, Ch. J., POUND, LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Judgments reversed, etc.